## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### Southern Division

| | |
|---|---|
| MICHAEL NICHOLAS REID BRUCE, )<br>individually and on behalf )<br>of all other similarly situated, )<br>        )<br>    Plaintiff, )<br>        )<br>v.      )<br>        )<br>NORFOLK SOUTHERN CORP. )<br>650 W. Peachtree Street NW )<br>Atlanta, Georgia 30308 )<br>        )<br>    Defendant. ) | **COMPLAINT – CLASS ACTION**<br><br>**EXEMPT FROM FILING FEES**<br>**UNDER 38 U.S.C. § 4323(h)(1)** |

COMES NOW, Plaintiff Michael Nicholas Reid Bruce, and files this Complaint, individually and on behalf of all others similarly situated, against Defendant Norfolk Southern Corporation ("Norfolk Southern" or "Defendant") and in support thereof alleges as follows:

### INTRODUCTION

1. This is a class action under the Uniform Services Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*, on behalf of current and former employees of Norfolk Southern who took periods of short-term military leave from Defendant but were not paid their normal wages or salaries during such periods even though

employees taking comparable non-military leaves did receive normal wages or salaries during their leaves.

2. On information and belief, since before October 10, 2008, when Congress amended USERRA to clarify that there is no statute of limitations for USERRA claims, Norfolk Southern has had, and continues to have, a policy and practice of continuing to pay its union employees' normal wages or salaries during certain types of non-military leaves-of-absence but not continuing to pay wages or salaries to union employees when they take short-term military leave.

3. By continuing to pay employees' wages and salaries during periods of comparable non-military leaves, like sick leave, personal leave, bereavement leave, jury duty, and other comparable leaves, while not paying wages or salaries to employees taking short-term military leave, Norfolk Southern has violated USERRA, 38 U.S.C. § 4316(b).

4. USERRA requires employers to treat military leave no less favorably than other comparable forms of non-military leave, meaning military leave must be given "the most favorable treatment accorded to any comparable form of leave." 20 C.F.R. § 1002.150(b) (2006) (first effective on January 6, 2006). By paying employees on some comparable non-military leaves their full wages or salaries but not paying the same to Mr. Bruce and other similarly situated employees on short-term military leave, Norfolk Southern has violated USERRA's mandate.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, and 38 U.S.C. § 4323(b)(3), because USERRA is a federal law that provides district courts of the United States with jurisdiction over USERRA actions brought against private employers.

6. Norfolk Southern is a private employer under the meaning of 38 U.S.C. § 4303(4)(A) because it is a non-governmental entity that "pays salary or wages for work performed."

7. Venue is proper in this District Court under 38 U.S.C. § 4323(c)(2), because Norfolk Southern maintains a place of business—a "Major Station"—in Mobile, Alabama. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions relating to this action occurred in near Plaintiff's home in Spanish Fort, Alabama and his primary office location in Mobile, Alabama.

## PARTIES

8. Plaintiff Michael Nicholas Reid Bruce has been continuously employed by Norfolk Southern since March 2022. He works as a Communications Electronic Technician performing Communication and Signal work.

9. Mr. Bruce travels to various work locations as part of his duties, but he works almost exclusively in Alabama. He also works out of his primary office location, in Mobile, Alabama, at least weekly.

3

10. Mr. Bruce also serves in the Army National Guard ("ANG") and has done so since entering military service in February 2008. Since his employment began at Norfolk Southern, Mr. Bruce has routinely taken short-term military leave from Defendant to serve in the ANG. He resides in Spanish Fort, Alabama with his wife and five children.

11. Norfolk Southern Corporation is a publicly traded company headquartered in Atlanta, Georgia. According to its 2024 Annual Report, Norfolk Southern employed more than 19,600 people. Norfolk Southern, 2024 Form 10-K, at K8 (Feb. 10, 2025).

12. About 80% of the total number of employees are covered by collective bargaining agreements. *Id.*

13. Approximately 11% of the total workforce are "active-duty" and veteran employees. Norfolk Southern Corporate Commc'ns Dep't, *NS: Honoring Our Veterans*, Railway Age (Nov. 11, 2024), https://www.railwayage.com/freight/class-i/ns-honoring-our-veterans/.

## FACTUAL ALLEGATIONS

14. When a union servicemember employee of Norfolk Southern takes short-term military leave (defined here for reasons noted below as 31 continuous days or less), Norfolk Southern does not continue to pay that employee's wages or salary.

15.  But when a Norfolk Southern union employee is absent from their employment for any one of several non-military reasons for a short period of days, including that an employee has become ill, is away from work to deal with the death of a family member, uses personal leave days, or must perform jury duty, that employee continues to receive all or most of their wages or salary.

16.  Pursuant to an application process, Norfolk Southern does provide a limited-duration, fixed-amount, monthly stipend for active full-time union ("Agreement") and non-union ("Non-agreement") employees who are called to active duty from the ready reserve by a presidential executive order issued under Title 10 of the U.S. Code. But this is a stipend for long-term military leave and only consistently applies when the callup is for a duration of greater than 31 days.

17.  On information and belief, Norfolk Southern has an additional policy that allows Non-agreement servicemember employees to receive differential pay for short-term military leaves during their two-week annual training events ("AT"). This pay is allowed even though the AT, classified by the military as "active duty for training," is funded under other than Title 10 and is not pursuant to presidential executive order.

18.  On information and belief, Norfolk Southern has had a policy or practice of not paying Agreement servicemember employees a wage or salary during periods of short-term military leave (any number of continuous days up to 31 days) since at

least October 10, 2008, although it has consistently provided Agreement employees on comparable, short-term, non-military leaves with their full wages or salary since that time.

19. USERRA requires that an employee on a military leave-of-absence from work shall be

> entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1)(B).

20. Because the "rights and benefits" that Norfolk Southern provides to similarly situated employees on comparable non-military leaves include pay, Defendant must also provide pay for military leave. 38 U.S.C. §§ 4303(2), 4316(b)(1)(B); 20 C.F.R. § 1002.150(a); *Myrick v. City of Hoover*, 69 F.4th 1309, 1317 (11th Cir. 2023) (noting that "the Seventh and Third Circuits have held that compensation during leave is a 'right or benefit' provided by § 4316(b)(1)(B)" and refusing to hold otherwise); *Reep v. Delta Airlines, Inc.*, No. 1:21-cv-1076-TCB, 2022 U.S. Dist. LEXIS 60064, at *13-14 (N.D. Ga. Mar. 29, 2022).

21. As part of his ANG duty, Mr. Bruce is obligated to perform forty-eight (48) drill or "inactive duty training" periods every year. Each drill period is four hours

long. Mr. Bruce typically satisfies this obligation by performing four drill periods over one weekend each month during the year.

22.   Mr. Bruce regularly works at least one weekend-day (usually Sunday) each week at Norfolk Southern.

23.   Mr. Bruce regularly took short-term military leave from his employment at Norfolk Southern to perform his required ANG drill weekend duty.

24.   Norfolk Southern's policy is to provide no pay to Mr. Bruce for the day or days (sometimes including travel time) that he misses work while on military leave for his drill weekends.

25.   Norfolk Southern's failure to pay Mr. Bruce is routinely indicated as a reduction in his monthly pay on his "detail of earnings" pay statement.

26.   In addition to his required weekend drill periods, Mr. Bruce must normally attend one AT or "active duty for training" event every year lasting about two weeks.

27.   One year, Mr. Bruce's unit required him to perform a "warfighter exercise" in place of his normal AT, which ran for about three weeks.

28.   Mr. Bruce has taken short-term military leave from his employment at Norfolk Southern to perform his required AT (or warfighter exercise) with the ANG every year during his employment.

29.   Norfolk Southern does not pay Mr. Bruce for this short-term military leave.

30.   Almost every Guardsmen and Reservist serving in the United States Military who is not presently on active-duty orders under Title 10, including such servicemembers working for Norfolk Southern, must meet these monthly drill period and AT requirements. *See Joining the Guard or Reserves*, Military OneSource, https://www.militaryonesource.mil/resources/millife-guides/guard-and-reserves/ (last visited Oct. 29, 2025).

31.   Servicemember Agreement employees, like Mr. Bruce, and non-military Agreement employees who together perform Communications and Signal work under their collective bargaining agreement ("CBA") are entitled to sick leave, personal leave days, bereavement leave, and jury duty leave. All these leaves are paid leaves.

32.   These Communication and Signal workers are allowed to take full-paid sick leave in one-day increments up to four days in a calendar year. This may be extended up to seven days with the use of three personal leave days, used as additional days of full-paid sick leave.

33.   Norfolk Southern employees across all Agreement workgroups can combine sick-leave days and personal-leave days to receive seven days of full-paid sick time in this manner. Josh Funk, *Norfolk Southern is 1st railroad to give all workers sick time as others negotiate with unions*, Associated Press (June 5, 2023, 5:35 PM), https://apnews.com/article/railroad-paid-sick-time-negotiations-norfolk-southern-

70327831f881dcf86a43e05d22a5bdd5 ("[A]ll of these deals provide for up to seven days of paid sick time . . . .").

34. Communications and Signal workers also receive up to three days of full-paid bereavement leave per separate death. Multiple three-day periods are possible so long as they do not overlap.

35. On information and belief, these bereavement-leave provisions are similar across all Agreement workgroups.

36. Communications and Signal workers receive pay when they must miss work for jury duty for any number of days up to sixty days in any calendar year. The full daily pay due by Norfolk Southern is reduced by the small daily amount allowed for court-paid jury service, but it is not reduced by allowances paid by the court for meals, lodging, or transportation.

37. Because some of the states where Norfolk Southern employs workers have laws requiring private employers to pay for jury service, this jury-duty provision is likely uniform across all workgroups and has been for as long as these laws have been in effect. *See, e.g.*, Ala. Code § 12-16-8(c) (2024); Tenn. Code Ann. § 22-4-106(b) (2024). These laws were in effect before October 10, 2008.

38. The determination of whether any non-military leaves are "comparable" to military leave is a central issue for the fact-finder under USERRA, and the Department of Labor ("DOL") has this to say on the matter:

> In order to determine whether any two types of leave are comparable, the duration of leave may be the most significant factor to compare. For instance, a two-day funeral leave will not be "comparable" to an extended leave for service in the uniformed service. In addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered.

20 C.F.R. § 1002.150(b).

39. For Norfolk Southern Agreement employees, sick leave, personal leave, bereavement leave, and jury duty are comparable in duration to short-term military leave, each often lasting only a few days but occasionally lasting a week or more.

40. Mr. Bruce has taken a single day of military leave from Norfolk Southern and up to as many three days (when travel to and from the unit is required) to satisfy his drill weekend requirements. If he is not scheduled to work on one of the days of his absence, there is no need to take military leave for that day.

41. Sick leave for all Norfolk Southern Agreement employees may be taken in single-day increments.

42. If a Norfolk Southern employee is ill for two consecutive days but was only scheduled to work for one of those days, then just like Mr. Bruce and his military leave, that employee would not need to take sick leave for both days.

43. For all the leaves—military and non-military—Norfolk Southern employees normally have no ability to choose when to take those leaves.

44. Although the United States still has an all-volunteer force, once servicemembers agree to serve in the Guard or Reserve, days of drill weekend and AT are involuntary, and their timing is driven by unit needs and not by the choice of the servicemembers. This is true for Mr. Bruce as well.

45. Sick leave due to physical illness, mental illness, off-duty injury, and many medical conditions is taken when the sickness or injury occurs and not due to a timing choice by the employee. Personal days will usually be involuntary when used to supplement sick leave. Bereavement leave is taken due to the death of a loved one, an uncontrollable event. And jury duty is required by law.

46. A principal purpose of the paid leaves at Norfolk Southern is to reduce the burden on an employee who is subject to an involuntary circumstance. Jury duty leave has the additional purpose of complying with state laws that require paid leave, but those state laws are designed to encourage civic participation by reducing the burden on the employee.

47. The purpose of military leave is similarly to reduce or eliminate burdens and disadvantages on the military employee and to comply with the law—USERRA.

48. Norfolk Southern is aware of the provisions of USERRA.

49. Considering that Norfolk Southern provides Non-agreement employees with pay for their short-term military leaves during their ATs, Defendant's violation of

USERRA for Agreement employees by providing no pay for any short-term military leave shows a knowing failure to comply with the provisions of USERRA.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, the maintenance of this action being authorized by the satisfaction of all prerequisites of Rule 23(a) and under each of the three provisions listed in Rule 23(b).

51. Plaintiff brings this class action on behalf of the following Class comprising a minimum of approximately 1,700 members:

> Current and former employees of Norfolk Southern Corporation who, during their employment with Norfolk Southern at any time from October 10, 2008, through the date of judgment in this action, have taken short-term military leave from their employment with Norfolk Southern—defined as military leave that lasted 31 or fewer days, including "inactive duty training" periods (like "weekend drills") and "active duty for training" events (like "ATs")—and were subject to a collective bargaining agreement.

### Impracticable Joinder: Rule 23(a)(1)

52. There are enough members of the Class that joinder is not practicable.

53. As derived from ¶¶11-13, *supra*, Norfolk Southern had 19,600 employees as of the end of 2024.

54. If Agreement employees equate to 80% of that number, then Norfolk Southern had 15,680 Agreement employees at the end of 2024.

55.  Crediting 11% of this estimated number of Agreement employees as those who are either current military members or veterans—assuming a roughly homogenous distribution of current military members and veterans between Agreement and Non-agreement employees—yields about 1,724 current Agreement employees who are also current military members or veterans.

56.  This 1,724 number does not count former Agreement employees. Due to normal turnover, there will likely be many Class members who are no longer employed by Norfolk Southern, making the Class significantly larger. Even accounting for the likely fact that some of this 1,724 number will not have served while working for Norfolk Southern—veterans first employed with Defendant after leaving military service—the total number will still likely be larger than the estimate indicated here because the look back period goes to October 10, 2008.

**Commonality: Rule 23(a)(2)**

57.  At least two common questions affect every Class member, the first one a question of law and the second a question of fact:

    a.  Whether pay for takers of the nonmilitary leaves is among the "rights and benefits" that must be also provided to takers of short-term military leave under USERRA § 4316(b)(1)(B); and

b.  Whether sick leave (including appended personal leave used as sick leave), personal leave, bereavement leave, and/or jury duty is comparable to short-term military leave under 20 C.F.R. § 1002.150(b).

58.    The claim in this action is that this Class of military leave takers are entitled to their full wages and/or salary while on military leave under USERRA § 4316(b) in part because this pay is among the "rights and benefits" afforded to similarly situated takers of comparable non-military leave at Norfolk Southern. The answer to the above "rights and benefits" question thus affects the entire Class.

59.  If pay is determined to be a "right" or "benefit" under USERRA § 4316(b), then whether such pay is due in full to every Class member is contingent upon whether any non-military leave with pay is "comparable" to short-term military leave.

60.  Because of this, two important facts regarding the leave practices of Norfolk Southern unite all members of the Class. First, the uniform policy or practice of Norfolk Southern is now and has been in the past to provide no paid, short-term military leave to any Class member. Second, every Class member has the right to full-paid sick leave with the ability to extend that paid leave to seven days using personal leave days, and every Class member has an identical jury duty differential pay provision.

61.   Thus, these two questions provide essential answers to every member of the Class. Affirmative answers to both questions strengthen the claims of the Class.

**Typicality: Rule 23(a)(3)**

62.   Plaintiff's claims are typical of the Class because Plaintiff, like every member of the Class, has been subject to Defendant's uniform policy or practice of not paying Agreement employees for short-term military leave. Additionally, Plaintiff and all members of the Class have nearly identical sick leave, jury duty, and, on information and belief, bereavement leave and personal leave provisions to which their respective CBAs entitle them.

63.   Plaintiff's military leaves are typical of the Class because he has taken days of unpaid military leave for drill weekends and has also taken unpaid military leave for two-week ATs.

64.   Every Class member has the same claim under USERRA § 4316(b) and has been injured by Defendant's uniform policy violating USERRA.

**Adequacy: Rule 23(a)(4)**

65.   Plaintiff will fairly and adequately protect the interests of the Class because his interests and the interests of the Class are well aligned. He has no conflicting interests with any member of the Class.

66. Plaintiff understands his obligations with respect to the Class and has already devoted significant time and energy to meeting those obligations. He is prepared to continue to execute his duties as Class representative.

67. Norfolk Southern has no unique defenses to Plaintiff's claim that only affect Plaintiff and might interfere with his ability to act as Class representative.

68. Class counsel is well experienced in litigation generally, has worked on both Rule 23 and collective actions under the Fair Labor Standards Act, and has sufficient resources to conduct this relatively straightforward litigation.

**Class Action May Be Maintained Under Rule 23(b)(1)**

69. Because the central question of whether a particular non-military leave is comparable to short-term military leave is a question of fact, fact-finders in different courts adjudicating this question with respect to individual Class members would create a risk that Norfolk Southern may face incompatible standards of conduct.

70. Even Agreement employees operating under the same CBA could face opposing jury decisions in answering this question, producing conflicting requirements going forward for Defendant. For this reason, this class action may be maintained under Rule 23(b)(1)(A).

71. Because the central question of whether pay during non-military leave may be among the "rights and benefits" due to an Agreement employee taking short-term military leave is a question of law, a single district court finding the answer to be in

the negative for an individual class member's USERRA claim may impact the legal landscape in a way that impedes other Class members' abilities to protect their USERRA rights. For this reason, this class action may be maintained under Rule 23(b)(1)(B).

### Class Action May Be Maintained Under Rule 23(b)(2)

72. Norfolk Southern has uniformly refused to pay Agreement employees on short-term military leave while paying Agreement employees on comparable non-military leaves their full wages.

73. The entire Class is affected or has been affected by this single, uniformly applied policy or practice. A declaratory judgment stating that Defendant has violated USERRA by failing to pay employees when they take short-term military ensures that an appropriate remedy (pay) may be subsequently calculated and granted to all members of the Class.

74. For these reasons, this class action may be maintained under Rule 23(b)(2).

### Class Action May Be Maintained Under Rule 23(b)(3)

#### (i)  Predominance

75. The two previously noted Rule 23(a)(2) questions (of law and fact) are common to all Class members and predominate over questions affecting only individual members of the Class.

76.   Defendant failed to pay Class members on short-term military leave as part of a common practice or policy while paying similarly situated employees on comparable non-military leaves their full wages or salary.

77.   All Class members, and indeed Agreement employees outside the Class, are entitled to pay when they take such non-military leaves, and those leaves are similar across all Agreement work groups (which include all Class members).

78.   As the preceding two paragraphs suggest, all Class members require affirmative answers to both Rule 23(a)(2) questions to prevail, and these two questions may be answered for the Class in a single action. These questions also present the principal hurdles that Class members must overcome to succeed in this action predicated on USERRA § 4316(b)(1).

79.   The tallying of Class members' individual wages at the time that Defendant failed to pay them for short-term military leave, which is needed to determine damages, can be readily made based on information that Norfolk Southern possesses. This factor does not override common question predominance.

80.   The fact of when an individual Class member took military leave, which is also required, should also be in the possession of Norfolk Southern, since the taking of military leave requires notification to supervisory personnel, and this information is also marked on the employee's "detail of earnings" pay statement. This factor also does not override common question predominance.

### (ii) Superiority

81.  A class action is the superior vehicle to adjudicate the claims of this action owing principally to efficiency but fairness as well.

82.  First, the amount of recovery for individual plaintiffs would not compare favorably to the effort needed to achieve the recovery. Military leaves of 31 days or less, particularly when associated with drill weekends, will not likely produce enough to warrant the cost of litigating on an individual basis in federal court. But all Class members may benefit from the adjudication of this single action, advancing efficiency and economy.

83.  Second, no other litigation concerning Plaintiff's claim that Norfolk Southern should have paid its Agreement employees when they took short-term military leave has been commenced by any member of the Class.

84.  Third, concentrating claims against Norfolk Southern in federal court near the work and home location of the putative Class Representative and also near the location of a Major Station for Norfolk Southern is fair for all parties.

85.  Fourth and finally, there are no unusual difficulties in managing this case, of this size and relative simplicity, as a class action.

## COUNT I

## VIOLATION OF USERRA, 38 U.S.C. § 4316(b)(1)

86.  Plaintiff realleges and incorporates herein all the preceding allegations as if fully restated in this Count.

87.  USERRA, 38 U.S.C. § 4316(b)(1), requires that "a person who is absent from a position of employment by reason of service in the uniformed services" (*i.e.*, those on military leave) shall be "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service."

88.  The Secretary of the Department of Labor, under the authority Congress granted in USERRA, 38 U.S.C. § 4331(a), has prescribed regulations implementing § 4316(b)(1). They provide that "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services." 20 C.F.R. § 1002.150(b). The "duration of leave may be the most significant factor to compare" when determining whether non-military leaves are comparable to military leave. *Id.* Other factors "such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." *Id.*

89.   Mr. Bruce and members of the Class were absent from their employment on short-term military leave for the purpose of performing drill weekends, ATs, and other active or inactive duty for training.

90.   Mr. Bruce's service and the service of other members of the Class qualify as "service in the uniformed services" under USERRA. 38 U.S.C. § 4303(13) (including "active duty for training," sometimes known as ATs, and "inactive duty training," sometimes known as drill weekends, as covered service).

91.   As described above, Norfolk Southern has maintained a common policy or practice of failing to pay Agreement employees their regular wages or salaries when they take short-term military leave, while paying such employees their wages or salaries when they take other comparable forms of non-military leave like sick leave, personal leave, bereavement leave, and jury duty.

92.   As described above, these non-military leaves are comparable to short-term military leave in duration, purpose, and in the ability of the employee to determine when to take the leave.

93.   By adopting a uniform practice or policy of failing to provide full pay to Class members when they took short-term military leave, Norfolk Southern has failed to provide the most favorable treatment accorded to employees who took any comparable non-military leave. Thus, Norfolk Southern has violated and continues to violate USERRA, 38 U.S.C. § 4316(b)(1).

94.   Class members have suffered lost wages, salaries, and/or compensation due to Defendant's ongoing violation.

95.   Paying Non-agreement employees their wages or salaries both during short-term military leave (for their two-week, annual, active-duty-for-training events) and non-military leaves—while applying a uniform policy or practice of refusing to pay Agreement employees while on short-term military leave, even though it pays Agreement employees on comparable non-military leaves—shows that Norfolk Southern knowingly failed to comply with USERRA § 4316(b)(1) with respect to the members of the Class.

WHEREFORE, Plaintiff Michael Nicholas Reid Bruce respectfully requests, on behalf of himself and the other members of the Class, that this Court:

1.   Declare that Norfolk Southern's common policy or practice of failing to pay Class Members their regular wages or salaries during periods of short-term military leave while providing regular wages or salaries to Agreement employees when they took comparable forms of non-military leave violated USERRA § 4316(b);

2.   Require Norfolk Southern to comply with USERRA § 4316(b) by paying salaries or wages to presently employed Class Members who take short-term military leave in the future;

3.   Require Norfolk Southern to compensate Class Members for all lost wages suffered by Defendant's common policy or practice as noted above;

4. Require Norfolk Southern to pay members of the Class interest on the amount owed above at the rate of 3 percent per year, as allowed by 38 U.S.C. § 4323(d)(1)(C);

5. Require Norfolk Southern to pay liquidated damages of the greater of $50,000 or the damages plus interest listed above, as described in 38 U.S.C. § 4323(d)(1)(D), to each Class Member should this Court find Defendant knowingly violated USERRA;

6. Declare Norfolk Southern knowingly violated USERRA § 4316(b)(1);

7. Require Norfolk Southern pay reasonable attorneys fees, expert witness fees, and other litigation expenses, as allowed by 38 U.S.C. § 4323(h)(2);

8. Certify Plaintiff Michael Bruce as Class Representative;

9. Certify below-listed counsel as Class Counsel; and

10. Grant such other relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

The Plaintiff demands a trial by jury all such claims subject the Seventh Amendment right to a jury trial.

Respectfully submitted,

/s/*Richard P. Rouco*
Richard P. Rouco
AOCID ROU008
QUINN, CONNOR, WEAVER,
    DAVIES & ROUCO LLP
Two North Twentieth Street
2 – 20th Street North, Ste. 930
Birmingham, AL  35203
(205) 870-9989
rrouco@qcwdr.com

/s/ *George N. Davies*

George N. Davies
QUINN, CONNOR, WEAVER,
   DAVIES & ROUCO LLP
Two North Twentieth Street
2 – 20th Street North, Ste. 930
Birmingham, AL  35203
(205) 870-9989
gdavies@qcwdr.com


/s/ *Justin P. Keating*

Justin P. Keating
(*pro hac vice* forthcoming)
BEINS, AXELROD & KEATING, P.C.
1800 Diagonal Rd
Suite 600
Alexandria, VA 22314
703.966.3193
jkeating@beinsaxelrod.com

/s/ *Rodney W. Harrell*

Rodney W. Harrell
(*pro hac vice* forthcoming)
BEINS, AXELROD & KEATING, P.C.
1800 Diagonal Rd
Suite 600
Alexandria, VA 22314
916.276.4715
rharrell@beinsaxelrod.com


**COUNSEL FOR PLAINTIFF
AND PROPOSED CLASS**