**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL NICHOLAS REID BRUCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **1:25-cv-00442-KD-C** |
| **NORFOLK SOUTHERN CORP., and NORFOLK SOUTHERN RAILWAY COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Defendants' Motion to Dismiss First Amended Complaint and Memorandum of Law (Doc. 35) filed by Defendants Norfolk Southern Corporation ("NSC") and Norfolk Southern Railway Company ("NSRC"); the Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Complaint and Memorandum of Law (Doc. 36) filed by Plaintiff Michael Nicholas Reid Bruce ("Plaintiff" or "Mr. Bruce"); and the Defendants' Reply in Support of Motion to Dismiss. The Defendants' motion was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1). Upon consideration of the parties' briefs, it is **RECOMMENDED**, for the reasons stated herein, that the Defendants' motion be **DENIED.**

**I. Background**

Plaintiff filed the First Amended Complaint ("Complaint") on April 24, 2026, individually and on behalf of a putative class of current and former NSRC employees, asserting one count (Count I) under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). Plaintiff alleges Defendants have violated and continue to violate USERRA, 38 U.S.C. § 4316(b)(1), by not providing full pay to Class members when they took short-term

military leave, and therefore, failed to provide the most favorable treatment accorded to employees who took any comparable non-military leave. Defendants seek to dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II. Facts[1]

Plaintiff has been employed by NSRC since March 2022. (Doc.31, PageID.340). Plaintiff is an "Agreement" employee who works as a Communications Electronic Technician performing communication and signal work. (*Id.*; *see also* Doc. 31, PageID.336, ¶ 33). Plaintiff also serves in the Army National Guard (ANG) and has done so since entering military service in February 2008. (*Id.*). Since his employment began at NSRC, Plaintiff has routinely taken "short-term" military leave from his employer NSRC to serve in the ANG.[2] (*Id.*). As part of his ANG duty, Plaintiff is obligated to perform forty-eight (48) "drill" or "inactive duty training" periods every year. (Doc. 31, PageID.343). Each drill period is four (4) hours long. (*Id.*). Plaintiff typically performs four (4) drill periods over one (1) long weekend each month during the year. (*Id.*). Plaintiff asserts that he regularly works at least one weekend-day (usually Sunday) each week at NSRC. (*Id.*). Plaintiff must also normally attend one (1) inactive duty for training ("AT") event each year, which lasts about two (2) weeks. (Doc. 31, PageID.344). One year, Plaintiff's unit required him to do a "warfighter" exercise in place of his normal AT, which lasted about three (3) weeks. (*Id.*). Plaintiff has taken "short-term" military leave to perform his required AT with the ANG every year during

---

[1] The facts are taken from Plaintiff's factual allegations asserted in the Complaint and as set forth in the statement of facts in the Defendants' Motion to Dismiss First Amended Complaint and Memorandum of Law. (*See* Docs. 31, 35).

[2] The Complaint defines "short-term" military leave as thirty-one (31) continuous days or less. (Doc. 31, PageID.341).

his employment. (*Id.*). Defendants do not pay Plaintiff for his military leave. (*Id.*). NSRC is a wholly owned subsidiary of NSC. (*See* Docs. 10, 31, PageID.340).

**III. Legal Standards**

**A. Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. When a party files a Rule 12(b)(1) motion in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("Ordinarily, where both these grounds for dismissal apply, the court should dismiss only the jurisdictional ground under Fed. R. Civ. P. 12(b)(1), without reaching the question of failure to state a claim under Fed. R. Civ. P. 12(b)(6)") (citing C. Wright & A. Miller, Federal Practice and Procedure: Civil s 1350 (1971)).

"In ruling on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, it is within the district court's discretion 'to devise a method for making a determination with regard to the jurisdictional issue.'" *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1232 (11th Cir. 2021). A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) can be based on either a facial or factual challenge to the allegations in a complaint. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "'Facial attacks' on the complaint 'require[] the court merely to look and see [if] the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purpose of the motion.'" *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.). *cert denied*, 449 U.S.s 953 (1980)). However, the Court is not required to "ignore specific factual details of the pleading in favor of general conclusory allegations." *Pro.*

*Airline Flight Control Ass'n v. Spirit Airlines Inc.*, 593 F. Supp. 3d 1173, 1178-79 (S.D. Fla. 2022), aff'd, 65 F.4th 647 (11th Cir. 2023).

Factual attacks to subject matter jurisdiction challenge the existence of subject matter jurisdiction irrespective of the pleadings and permit the Court to consider matters outside the pleadings, such as testimony and affidavits. *Lawrence*, 919 F.2d at 1529.

> [W]hen the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id*. (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-413 (5th Cir. 1981)).

**B. Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "Well-plead factual allegations do not encompass mere 'labels and conclusions,' legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action." *Martin*, 2017 WL 3444738, at *1. To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A Rule 12(b)(6) motion questions the legal sufficiency of a complaint. In assessing the merits of the motion, the court must assume that all factual allegations set forth in the complaint

are true. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). In *McCullough v. Finley*, 907 F.3d 1324 (11th Cir. 2018), the Eleventh Circuit explains the framework used to analyze whether a complaint survives a motion to dismiss.

> To decide whether a complaint survives a motion to dismiss, we use a two-step framework. First, we identify the allegations that are "no more than conclusions." Conclusory allegations are not entitled to the assumption of truth. Second, after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations "plausibly give rise to an entitlement to relief."

*Id*. at 1333. (citations omitted).

## IV. Analysis

### A. The Railway Labor Act Does Not Preclude Plaintiff's Claim

Defendants first argue that Plaintiff's claim is precluded by the Railway Labor Act ("RLA") depriving the Court of subject matter jurisdiction and thus requiring dismissal of this action pursuant to Rule 12(b)(1). Defendants contend Plaintiff's USERRA claim raises a "minor dispute" under the RLA that is subject to mandatory arbitration because Count I of the Complaint alleges the terms of the Collective Bargaining Agreement ("CBA") are discriminatory, and the Complaint repeatedly references the CBA's leave of absence policies. According to Defendants, interpretation and application of the CBA's terms is necessary to resolve the Plaintiff's claim due to the variations and inherent nuances within the CBA governing leaves of absence.

Plaintiff argues in response that his claim falls entirely outside of the RLA. Plaintiff contends there is no controversy concerning the terms of the CBA, and he is not trying to enforce any contractual rights set forth in the CBA. Thus, according to Plaintiff, this Court has subject matter jurisdiction pursuant to U.S.C. § 4323(b)(3), which is not undone by the RLA because no dispute "growing out of grievances or out of the interpretation or application" of any bargaining

agreement is involved in the Plaintiff's claim of right under USERRA. Moreover, Plaintiff claims the right to which he asserts entitlement – the right to receive pay for military leave when an employer generally provides pay for other employees on comparable non-military leaves - is an independent right guaranteed under USERRA.

The intent of the RLA is "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 114 S. Ct. 2239, 2243, 129 L. Ed. 2d 203 (1994). To facilitate that intent, the RLA establishes a mandatory "arbitral mechanism" to resolve two classes of disputes – "major" and "minor". *Id.* Major disputes "relate to 'the formation of collective [bargaining] agreements or efforts to secure them.'" *Id.* at 252. Minor disputes "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id*. at 252-253. Both "grievances" and disputes over "the interpretation or application" of a CBA "refer[] to disagreements over how to give effect to the bargained-for [CBA]." *Id*. at 254. "Minor disputes involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation[,]" *id*. at 254, and therefore, seek to enforce contractual rights. *Id*. A minor dispute is one that "may be conclusively resolved by interpreting the existing [CBA]." *Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 305, 109 S. Ct. 2477, 2482, 105 L. Ed. 2d 250 (1989). "[T]he RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines*, 512 U.S. at 256.

The question here is whether the Plaintiff's claim constitutes a minor dispute under the RLA precluding this Court from having jurisdiction. Plaintiff's Complaint asserts a claim under USERRA §4316(b) on behalf of current and former employees of NSRC who took periods of

short-term military leave but were not paid their normal wages or salaries during such leave periods even though employees taking comparable non-military leaves did receive normal wages or salaries during their respective leaves. For this dispute to constitute a "minor" dispute, it must involve the interpretation or application of the CBA. The Court has reviewed the Complaint and does not find Plaintiff's claim seeks to enforce any rights afforded by the CBA. The Complaint alleges no controversy concerning the meaning of any CBA provisions. In addition, the Complaint does reference the CBA but does not allege the CBA is discriminatory as Defendants claim. Although the Complaint does identify potentially comparative leave types to which service agreement employees are entitled under the CBA, the Court is not convinced that referencing the CBA triggers mandatory arbitration under the RLA. Defendants contend Plaintiff's claim requires the interpretation and application of the CBA to resolve the claim due to variations and nuances within the CBA governing leaves of absence. Defendants have not shown how interpreting the terms of the CBA to determine what the comparable leave types entail could be dispositive of Plaintiff's USERRA claim that Defendants have violated Plaintiff's (and the Class's) right under USERRA to receive pay for short-term military leave. *See Palova v. United Airlines, Inc.*, 161 F.4th 350 (5th Cir. 2025). Interpretation of different leave types referenced in the CBA could assist with a comparability analysis, but additional fact inquiries would still be necessary to resolve Plaintiff's claim. *See e.g. Palova*; *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424 (9th Cir. 2023).

Based on the foregoing, the Court finds Plaintiff's claim falls outside of the RLA. Accordingly, the RLA does not preclude this court from having subject matter jurisdiction over Plaintiff's claim.

**B. Plaintiff Plausibly Alleges a Claim Under USERRA, 38 U.S.C. § 4316(b)**

Defendant argues that even if the Court finds it has jurisdiction over Plaintiff's claim, the Complaint fails to state a claim for relief under Rule 12(b)(6) for the following reasons: (i) USERRA's statutory text excludes paid leave as a right or benefit; (ii) USERRA's regulations at 10 U.S.C. § 1002.150 are invalid and no longer entitled to deference under the Supreme Court's decision in *Loper Bright Enters. V. Raimondo*, 603 U.S. 369, 412 (2024); (iii) USERRA is not a veteran's preference statute; (iv) Plaintiff is not similarly situated to employees who are not covered by the applicable CBA; (v) Plaintiff and putative class members are prohibited under 5 U.S.C. § 5536 from receiving compensation for uniformed service from private sources unless expressly authorized by Congress, and no such grant of authority exists under USERRA; and (vi) NSC is not Plaintiff's employer within the meaning of USERRA. The Court addresses each of the Defendants' arguments in turn.

A claim under USERRA requires a plaintiff servicemember to allege 1) they were absent from a position of employment; 2) by reason of service in the uniformed services; and 3) the employer denied the servicemember on military leave such other rights and benefits not determined by seniority as are generally provided to employees who are furloughed or on leave and have similar seniority, status, and pay. 38 U.S.C. § 4316(b)(1).

Plaintiff and Defendants disagree on whether paid leave is a right or benefit under USERRA based on the plain language of the statute. Defendants claim USERRA is not and was never intended to be a right or benefit under USERRA. Defendants contend the plain language of USERRA limits the inclusion of wages among the "rights and benefits" to which employees on military leave are entitled to wages "for work performed[.]" Defendants reason that amendments to USERRA since 2019 have not included reference to paid leave as a non-seniority right or benefit

under USERRA because Congress did not intend for private employers to provide paid leave for absences due to uniformed service. Defendants also claim that application of the "negative implication canon" or "*expressio unius est exclusio alterius*" to the language of 38 U.S.C. §4303(2) serves to exclude wages for time *not* worked. Defendants maintain wages for time not worked were excluded from the statute by deliberate choice, not inadvertence.

Plaintiff argues that whether pay is a "right" or "benefit" under 38 U.SC. 4316(b)(1)(B) can be determined by reading the statute, without reference to any Department of Labor ("DOL") regulation. Plaintiff claims every court to have ruled on this issue that has not been overturned has interpreted the statute and held that pay for military leave takers is among the "rights and benefits" that employers must provide if they also pay similarly situated nonmilitary leave takers. Plaintiff relies on the decisions of the Third and Seventh Circuits, the Eastern District of Washington, the Northern District of Georgia, and the Eastern District of Pennsylvania to support these arguments.[3] Plaintiff further argues the definition of "rights and benefits" under 38 U.S.C. § 4303(2) is expansive, not limiting as Defendants claim.

As Defendants correctly state in their brief, a court must always begin with the language of the statute itself when interpreting federal statutes. *See Baker v. United Parcel Serv. Inc.*, 596 F. Supp. 3d 1251, 1255 (E.D. Wash. 2022) ("The Court must 'begin and end [its] inquiry with the text.'"). But the Court, in analyzing the statute's text, must also consider how the text fits into the statute's intent. As explained by the court in *Baker*,

> The Court's task is to "interpret the words consistent with their 'ordinary meaning ... at the time Congress enacted the statute[,]' " as that is the "fundamental canon of statutory construction." The Court must "begin and

[3] *See Baker v. United Parcel Serv. Inc.*, 596 F. Supp. 3d 1251, 1257 (E.D. Wash. 2022); *Travers v. Federal Express Corp.*, 8 F.4th 198, 205-206 (3rd Cir. 2021); *White v. United Airlines, Inc.*, 987 F.3d 616 (7th Cir. 2021); *Haley v. Delta Airlines, Inc.*, No. 1:21-cv-1076-TCB; and *Scanlan v. Am. Airlines Grp., Inc.*, 384 F. Supp. 3d 520 (E.D. Pa. 2019).

> end [its] inquiry with the text." Still, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

596 F. Supp. 3d at 1255–56. Like *Baker*, in the instant case, "[t]he Court must also keep in mind that '[b]ecause USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries.'" *Id*. Considering the foregoing, the Court first looks to the statute's language. The text of § 4316(b)(1) provides, in part, as follows:

> [A] person who is absent from a position of employment by reason of service in the uniformed services shall be –
>
> (A) deemed to be on furlough or leave of absence while performing such service; and
>
> (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such a person performs such service.

38 U.S.C. § 4316(b)(1)(A)-(B). Section 4303(2) defines "rights and benefits" under USERRA as

> the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

The language of § 4303(2) is broad. *See Baker v. United Parcel Serv. Inc.*, 596 F. Supp. 3d 1251, 1257 (E.D. Wash. 2022); *Travers v. Federal Express Corp.*, 8 F.4th 198, 205-206 (3rd Cir. 2021); *Scanlan v. Am. Airlines Grp., Inc.*, 384 F. Supp. 3d 520 (E.D. Pa. 2019); and *White v. United*

*Airlines, Inc.*, 987 F.3d 616, 621 (7th Cir. 2021).[4] Section 4303(2) defines "terms", "conditions", and "privileges" as "including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed)." *See Baker,* 596 F. Supp. 3d at 1257. Use of the words "including" and "any" indicates the list is not exhaustive. *Id*. Moreover, pay during leave is encompassed by the broad terms 'privilege,' 'profit,' or 'gain.'" *Id*. at 1258; *see also Travers*, 8 F.4th at 205 ("The ordinary understanding of the words in the list easily reaches a wide range of benefits, including payment during leave.").

Regarding the parenthetical language to which Defendants raise issue, the Court disagrees with Defendants' application of the canon *expressio unius est exclusio alterius*. The parenthetical language "does not, by negative implication, exclude wages or salary for work not performed." *See Baker*, 596 F. Supp. 3d at 1258. The Court also finds the *White* Court's reasoning persuasive here:

> [T]he word 'including' inside a parenthetical makes a phrase illustrative, not exclusionary. It would be peculiar to read inclusive language embedded within a broadly worded definition as performing an exclusionary function.
>
> . . . [W]e are loath to place as much weight as United does on the *expression unius canon*, which we have characterized as "much-derided" and "disfavored." It is especially inapt where, as here, applying the canon would contradict the surrounding text. After all, a parenthetical is just that – a parenthetical – "and it cannot be used to overcome the operative terms of the statute."

*White*, 987 F.3d at 622. (citations omitted). In 2010, Congress expanded the parenthetical language of §4303(2) by removing the words "other than" and replacing them with "including." *See White*. Prior to the amendment, the parenthetical read "(other than wages or salary for work performed)." *White*, 987 F.3d at 622. To read the parenthetical as excluding wages or salary for

[4] These cases are not considered binding precedent, but the Court finds them persuasive here.

work performed is contradictory to the "operative terms of the statute." *Id.* A narrow reading of USERRA that excludes wages or salary for work not performed, such as paid leave, "is not the best reading given the law's history and its broad language." *Travers,* 8 F.4th at 206. Accordingly, the Court agrees with those other federal courts that have found paid leave is a right or benefit pursuant to § 4316(b)(1). *See Baker v. United Parcel Serv. Inc.*, 596 F. Supp. 3d 1251 (E.D. Wash. 2022); *Travers v. Federal Express Corp.*, 8 F.4th 198 (3rd Cir. 2021); and *White v. United Airlines, Inc.*, 987 F.3d 616 (7th Cir. 2021).[5]

Defendants contend Plaintiff cannot rely on USERRA's enforcing regulation, 20 C.F.R. § 1002.150(b), when alleging discrimination under USERRA because Courts must exercise independent judicial authority in deciding whether an agency has acted within its statutory authority, as the Administrative Procedures Act and *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) dictate. Defendants claim Plaintiff cannot rely on the holdings in *Travers v. Federal Express Corp.*, 8 F.4th 198 (3rd Cir. 2021), *White v. United Airlines, Inc.*, 987 F.3d 616 (7th Cir. 2021); *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424 (9th Cir. 2023), and *Myrick v. City of Hoover, Alabama*, 69 F.4th 1309 (11th Cir. 2023) to advance his argument that paid leave is a right or benefit recognized by USERRA because those cases were decided when the Court was bound by the principles of the *Chevron* deference to the Department of Labor's ("DOL") regulation at 20 C.F.R. § 1002.150(b).[6] As such, Defendants insist deference should not be given to § 1002.150(b) and request the Court set aside the regulation. Defendants, however, have not

---

[5] This Court has not been presented with an Eleventh Circuit decision on the issue of whether the definition of "rights and benefits" under § 4303(2) encompasses pay in the form of wages and salary during leave.

[6] *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), *overruled by Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024).

provided the Court with any relevant authority indicating the Court should not look to 20 C.F.R. § 1002.150(b) for guidance when performing a comparability analysis under USERRA. In *Sorenson v. Delta Air Lines, Inc.*, 174 F.4th 54 (11th Cir. 2026), the Eleventh Circuit quotes 20 C.F.R. § 1002.150(b) and *White v. United Airlines, Inc.*, 987 F.3d 616 (7th Cir. 2021) when discussing leave comparability under USERRA. In *Craig v. City of Los Angeles*, No. 2:23-CV-06581-SVW-JPR, 2024 WL 5516277 (C.D. Cal. Dec. 16, 2024), quotes *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424 (9th Cir. 2023) and § 1002.150(b) when discussing leave-type comparability. Both *Sorenson* and *Craig* were decided after *Loper Bright*. Regardless, any discussion about comparability, including whether the DOL's interpretation of §4316(b)(1)(B) deserves deference, is premature at this juncture. "Comparability is a mixed question of law and fact. Courts regularly decline to make comparability rulings on a motion to dismiss." *Baker*, 596 F. Supp. 3d 1251 at 1258–59. The Court does not yet have sufficient information to perform a comparability analysis, and such an analysis is irrelevant to the determination of whether Plaintiff plausibly alleges a claim for relief under 38 U.S.C. § 4316(b)(1).

Defendants argue that USERRA is not a veterans' preference statute and does not require preferential treatment by virtue of an employee's uniformed service. Defendants claim Plaintiff seeks double compensation from the government and NSRC. The cases cited by Defendants do not support their argument, as they are inapposite to the circumstances here. It is correct that USERRA is not a veterans' preference statute. However, the Court does not interpret Plaintiff's claim as seeking preferential treatment. USERRA mandates equality. As explained by the Eastern District of Pennsylvania in *Scanlan v. Am. Airlines Grp., Inc.*, 384 F. Supp. 3d 520, 527 (E.D. Pa. 2019):

> We return to the purposes of USERRA "to encourage noncareer service in the uniform services by eliminating or minimizing the

> disadvantages to civilian careers and employment which can result from such service" and "to prohibit discrimination against persons because of their service in the uniformed services." The words of USERRA must be construed liberally in favor of those in the uniformed services. Congress, we agree, did not impose a requirement in USERRA that employers in all instances provide differential pay to employees while on military leave. Nonetheless, § 4316(b)(1) clearly mandates that employees on military leave be treated equally with other employees with respect to their terms, conditions, and privileges of employment. As our Court of Appeals stated in Waltermyer in connection with USERRA's predecessor, "the statute establishes equality as the test." . . . Equal treatment exists only if those employees on short-term military leave have the same rights and benefits as other employees in comparable situations.

384 F. Supp. 3d at 527–28 (citations omitted). Here, Plaintiff claims he is entitled to the *same* benefit or right – paid leave – afforded similarly situated employees on comparable leaves of absence. Plaintiff's claim seeks equality, not preferential treatment.

Defendants claim the recognition of Plaintiff's "theory of liability will lead to absurd results" for Alabama employers because Alabama employers are required to provide unlimited fully paid jury leave. (*See* Doc. 35, PageID.400.). Defendants further claim that it is unlawful to require private employers to provide paid leave to employees on leave for uniformed service based on the Alabama Supreme Court's ruling in *White v. Associated Industries of Ala, Inc*., 373 So.2d 616 (1979), which declared unconstitutional a requirement under Ala. Code §31-2-3 that private employers provide up to 21 days of paid military leave per year. The Court is not persuaded by these arguments. It is the Court's duty to "read the unambiguous text of USERRA as written by Congress without engaging in speculation about any collateral consequences." *Scanlan*, 384 F. Supp. 3d at 527. Further,

> USERRA does not "nullify or diminish any Federal or State law ..., contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit

> provided for such person in this chapter." However, . . . USERRA supersedes laws and contractual agreements that limit not only the substantive rights it provides, but all rights and benefits under its provisions and any prerequisites to the exercise of those rights and benefits.

*Coleman v. CVS Pharmacy, Inc.*, No. 2:24-CV-231-JTA, 2025 WL 963066, at *5 (M.D. Ala. Mar. 31, 2025). USERRA's non-waiver provision provides as follows:

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C.A. § 4302. Thus, "USERRA expressly contemplates that its provisions preempt inconsistent state laws." *Wriggelsworth v. Brumbaugh*, 129 F. Supp. 2d 1106, 1112 (W.D. Mich. 2001).

Defendants contend Plaintiff's allegations concerning employees outside the CBA fail to plausibly state a claim for USERRA discrimination or a basis for liquidated damages. In response, Plaintiff explains he does not contend that he is similarly situated to other employees outside his bargaining unit. (*See* Doc. 36, PageID.571, n.4.). Accordingly, the Court finds this issue moot.

Defendants also argue that members of the uniformed service whose pay is fixed by statute cannot receive additional compensation for any service or duty unless specifically authorized by law and an appropriation of Congress pursuant to 5 U.S.C. § 5536. According to Plaintiff, the statute does not apply to private employers.

> Section § 5536 prohibits the receipt by federal employees with statutorily fixed salaries of "additional pay or allowance ... for any other service or duty" without specific authorization. The plain text of § 5536 limits its reach to payment for "other service or duty" falling within a federal employee's duties for which compensation is fixed by Congress. The Supreme Court explained in *Stansbury v. United States,* 8 Wall. 33, 75 U.S. 33, 37, 19 L.Ed. 315 (1868), of § 5536's predecessor, 5 U.S.C. § 70 (1842), that "[t]he law

> was passed to remedy an evil which had existed, of detailing officers with fixed pay to perform duties outside of their regular employment, and paying them for it, when the government was entitled, without this double pay, to all their services."

*Ass'n of Civilian Technicians v. F.L.R.A.*, 370 F.3d 1214, 1222–23 (D.C. Cir. 2004) (citations omitted). The Court finds Section § 5536 irrelevant here. Defendants provide no authority supporting their position that 5 U.S.C. § 5536 applies to private employers, preventing Plaintiff from plausibly alleging a claim for discrimination under USERRA because he lacks Article III standing.

Finally, Defendants claim NSC is not Plaintiff's employer under USERRA, and therefore, Plaintiff's Complaint is due to be dismissed. The definition of "employer" under USERRA is broad. USERRA defines employer as an "entity that pays salary for wages for work performed" or "has control over employment opportunities," including an "entity to whom the employer has delegated the performance of employment related responsibilities." 38 U.S.C. § 4303(4)(A)(i). "This implies that more than one entity may qualify as an 'employer' of the same employee. The use of the word 'delegate[]' suggests an intent to reach both direct and indirect employers, including parent corporations if they pay 'salary or wages for work performed or [have] control over employment opportunities.'" *Baker*, 596 F. Supp. 3d at 1259. Section 4303(4)(A)(i)'s text does not "require that an 'employer' have direct control over the matters that constitute a USERRA violation [,]" *id.*, but instead requires "the employer . . . have control over the plaintiff's employment opportunities writ large." *Id.*

Relying on *Dees v. Hyundai Motoer Mfg. Alabama, LLC*, 605 F. Supp. 2d 1220 (M.D. Ala. 2009), *aff'dd*, 368 Fed. Appx. 49, (11th Cir. 2010), Defendants insist the totality of the circumstances should be examined in determining whether an entity carries out employment-related responsibilities sufficient to confer upon it joint employer status. In *Dees* the Court

implemented the totality of the circumstances test at the summary judgment stage in the litigation. Defendants claim that Plaintiff's pay statement confirms that NSRC is Plaintiff's employer and NSC is simply a payroll agent, which does not satisfy USERRA's employer definition because NSC's responsibility is merely ministerial. Defendants also argue in their reply brief that Plaintiff's pay statement is unauthenticated, and Plaintiff cannot use the statement to amend his complaint by attaching it to an opposition brief.[7] Plaintiff counters by claiming that paying an employee's salaries or wages is a performance of employment related responsibilities under USERRA's definition of employer. Plaintiff further responds that USERRA does not include a "joint employer" concept or a totality of the circumstances test.

Here, the corporate disclosure statement (Doc. 10) filed by NSC shows that NSRC is a subsidiary of NSC. The Complaint alleges claims against both NSC and NSRC. Plaintiff alleges in the Complaint that NSC is a private employer and an entity to whom the employer has delegated the performance of employment-related responsibilities. Plaintiff also alleges in the Complaint that NSC has failed to pay Plaintiff for short-term military leave. Plaintiff further alleges in the Complaint that NSC provides a stipend for Agreement employees who take long-term military leave under a call-up to active duty by presidential executive order. Plaintiff further alleges that NSC and NSRC have a practice of not paying Agreement employees wages or salaries during periods of short-term military leave. In his opposition brief, Plaintiff reasons that since the aforementioned policy regarding long-term military leave is executed by NSC then it is a reasonable inference at the motion-to-dismiss stage that NSC has at least some control over the policy not to pay Agreement employees short-term military leave. Considering USERRA's broad

---

[7] Plaintiff filed a copy of one pay statement with his opposition to Defendant's initial motion to dismiss. (*See* Doc. 16, 16-2). The Plaintiff's pay statement filed with Doc. 16 was not considered when preparing this Report and Recommendation.

definition of employer, Plaintiff's allegations are sufficient to keep NSC as a party for now, as the Court "will not speculate about facts not part of the record." *See Baker*, 596 F. Supp. 3d at 1259.

Finally, Defendants' Reply in Support of Motion to Dismiss proffers a new argument in support of Defendants' claim that the plain language of USERRA does not support Plaintiff's claim.[8] Defendants assert that because Plaintiff has not plausibly alleged that Defendants were motivated by an intent to discriminate on the basis of uniformed service in failing to extend pay during short-term military leaves, Plaintiff's 4316(b) claim fails. (*See* Doc. 37, PageID.590). This argument should be rejected because raising an argument for the first time in a reply brief is procedurally improper. *See e.g. Park City Water Auth., Inc. v. N. Fork Apartments, L.P.*, No. CIV.A. 09-0240-WS-M, 2009 WL 4898354, at *1 (S.D. Ala. Dec. 14, 2009); *White v. ThyssenKrupp Steel USA, LLC*, 743 F. Supp. 2d 1340, 1357 (S.D. Ala. 2010); and *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005). Even if the Court were to find Defendants' new argument one that could be considered, the argument should not prevail.

Claims for discrimination and/or retaliation under 38 U.S.C. § 4311 require a two-step analysis:

> first the claimant must show by a preponderance of the evidence that his or her military service was a "substantial or motivating factor" to cause an adverse employment action; second, assuming the claimant has done so, the employer may avoid liability only by putting forward an affirmative defense that it would have taken the same action without regard to the military service.

*Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1108 (9th Cir. 2017). However, this analysis is not applied at the motion-to-dismiss stage.

> [E]valuating the plausibility of Plaintiff's claim does not involve an analysis of USERRA's burden shifting framework. This framework applies when a

[8] Plaintiff did not seek leave to file a sur-reply.

> court is considering the merits of a USERRA claim, and it asks whether the plaintiff has shown "by a preponderance of the evidence, that his or her protected status was a substantial or motivating factor in the adverse employment action." Once that burden is met, "the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." But this burden shifting framework closely matches the *McDonnell Douglas* framework applied in Title VII cases, which the Supreme Court clarified "is an evidentiary standard, not a pleading requirement." It is therefore inapplicable to Plaintiff's claims at the pleading stage.
>
> . . . [W]hen evaluating the plausibility of a discrimination claim, the standard is whether a plaintiff's nonconclusory allegations, if taken as true, "state a claim to relief that is plausible on its face."

*Craig v. City of Los Angeles*, No. 2:23-CV-06581-SVW-JPR, 2024 WL 5516277, at *5–6 (C.D. Cal. Dec. 16, 2024) (citations omitted). The Complaint contains non-conclusory allegations that similarly situated employees were treated differently than Plaintiff (and Class members), which is all that is required under the Rule 12(b)(6) standard. Thus, the Plaintiff's allegations regarding discrimination are sufficient to plausibly state a claim for discrimination under § 4311.

With the foregoing in mind, the Court finds that Plaintiff's Complaint plausibly gives rise to an entitlement to relief under 38 U.S.C. § 4316(b)(1).

Accordingly, it is recommended that Defendants' Motion to Dismiss be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate

judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on un-objected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review an appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 27th day of August, 2026.

**s/WILLIAM E. CASSADY**
**UNITED STATES MAGISTRATE JUDGE**